Thank you, Your Honor. May it please the Court, my name is Sarah Coffin and I'm appearing on behalf of the Petitioner. I would like to reserve two minutes at the end for rebuttal. Your Honors, the adverse credibility finding in this case is not supported by substantial evidence and must be overturned. The examples cited by the I.J. as the most significant of the alleged inconsistencies are not only not fatal in and of themselves, as the I.J. held on page 67 of the record, they are also wholly without support. The I.J. seized on a letter from the current President of the All-India Sikh Student Federation, or AISSF, submitted by Mr. Singh in support of his application. That letter states that Mr. Singh, quote, took part in activities such as recruiting new members, collecting funds, pasting posters, and campaigning during elections, whereas Mr. Singh testified that he, quote, made people acquainted with the Federation, put up posters, distributed flyers, and collected funds, but didn't actively participate in any elections. The I.J. found this to be a significant inconsistency, but that conclusion is without support. If we agree with you on that issue, how do you respond to the BIA's alternate holding that even assuming past persecution, that changed country conditions rebutted the presumption of a well-founded fear of future persecution? Well, Your Honor, I mean, it is our position that there was past persecution. We feel that there is a nexus in this case. It's very clear. And that because of the circumstances of the arrest, there's simply no evidence that an actual legitimate criminal prosecution was initiated against Mr. Singh. I think that was not Judge Thomas' question, and maybe I'll try again. The BIA says that in the future, there is a the government has rebutted the presumption of a continuing well-founded fear of persecution through individualized analysis. And they cite State Department reports, the long passage of time, the nature of the incidents that had been involved, and significant changes in India. And even assuming that your client was credible, why isn't that a holding that is supported by substantial evidence? Well, Your Honor, the country conditions reports, and they are cited by the IJ, the IJ found and the board found that they rebutted the presumption because human rights abuses by the Punjab police had decreased dramatically since 1995. But this is actually a general finding of improved conditions. And it does nothing to address the petitioner's specific situation, that he's a registered member of the AISSF who had been arrested and interrogated in the past, and for whom the police were still looking as recently as six or seven months before the hearing. So clearly conditions for this petitioner have not changed. Nothing submitted by the government or cited by the board is evidence that on an individualized basis rebuts Mr. Singh's specific grounds for a well-founded fear. In fact- Well, the BIA did, contrary to some of the BIA's holdings in other cases, the BIA did say, indicate that the presumption, the country reports were sufficiently individualized to apply in this case. Well, the country reports don't address someone in Mr. Singh's specific situation. In fact, the record demonstrates that people in Mr. Singh's situation continue to be targets for persecution by the police and are blacklisted and subjected to detention procedures which circumvent normal police routines. And that's at the record at 853. So, Your Honor, it's our position that there was nothing submitted that would, on an individualized basis, rebut any kind of presumption or, in turn, show that changed country conditions mean he does no longer have a well-founded  Basically, your argument is, first, that on this issue is that because the police are still looking for him, that that should take that out of the general country conditions finding, and, two, that you think that in the country reports that there's evidence in there as to this particular segment that would still support the conclusion that he would be, he suffers a well-founded fear of persecution, right? That's correct, Your Honor. Nothing that was cited by the IJ or the board in reference to the country conditions reports would rebut that. Counsel, in terms of the credibility findings by the court, the lower court, it's difficult for me, based on this record, to find how it is that we can determine that there's not substantial evidence to support those findings, because those findings are largely based on intangibles that we don't have before us, the demeanor of your client, of how he came across to the court. Those are precisely the types of things that we normally defer to the lower court to make that kind of assessment. How are we to substitute ourselves at this point? Well, Your Honor, the IJ's demeanor finding that Mr. Singh was evasive and nonresponsive is almost entirely based on factors concerning the nature of the testimony, which are ascertainable from the record and unsupported by it. That's not entirely correct, if I recall. I mean, there was particular findings with respect to his response to particular questions, the lack of eye contact, for example, when being confronted on a point. I mean, it wasn't just a broad-based, you know, we don't find him or I don't find him credible, but there were particular, again, somewhat intangible assessments made with respect to particular questioning. That's true, Your Honor. The IJ did find two specific examples. One of them was that when the Petitioner, Mr. Singh, testified regarding beatings he had received, torture he had received by the police, he didn't feel his testimony to be sufficiently emotional. And I would just remind the Court that those hearings took place 13 years after the incident took place. And that to rely exclusively on that finding to find the Petitioner not credible is simply not reasonable. The other demeanor finding that she found was much more generalized and had to do with him not making eye contact, but it didn't specify what part of the questioning that was related to. And I would, on that point, I would direct your attention to the fact that the Petitioner's demeanor or lack of eye contact during cross-examination, which is what the IJ cites, was actually took place during exchanges where he was being cross-examined on the contents of the assessment to refer. And it's our position that that assessment to refer was, should not have been relied on by the IJ in making her credibility determination. Without requiring the government to produce the asylum officer, the asylum officer's asylum officer was unavailable to testify. The IJ violated Mr. Singh's due process rights and ignored the regulation at 8 CFR 124010, which clearly states that the alien has a right to the reasonable opportunity to cross-examine witnesses presented by the government. Moreover, the assessment to refer in this particular case is simply not a reliable account of what Mr. Singh was asked and how he answered during the two interviews in 1992 and 1997. The law of the circuit is clear on this point. In Jarnail Singh v. Gonzalez, this Court discussed at length why an assessment to refer admitted by an IJ under nearly identical circumstances was insufficient record evidence to support an adverse credibility finding. In Jarnail Singh, as in this case, the applicant was, there's no evidence that the applicant was placed under oath at the interview, no evidence that an interpreter was used at the interview, provided an opportunity to ask questions at the end, nor was the asylum officer presented at the hearing or the notes offered. Additionally, in this case, there are other factors that indicate the patent unreliability of this assessment to refer. For example, the petitioner was interviewed twice, as I said, in 1992 and 1997. There is no indication that the same officer conducted both interviews. Jarnail Singh makes clear that the asylum officer's assessment to refer is not sufficient evidence of what Mr. Singh said to permit evaluation of an asserted inconsistency. And I would argue that the demeanor finding regarding cross-examination is directly related to the IJ's reliance on this unreliable assessment to refer. And with that, Your Honor, I'm going to reserve the rest of my time. Thank you, counsel. Here from the government. May it please the Court. My name is Eric Knipp, and I represent the United States in this case. The Court should uphold the Board's determination for three reasons. First of all, the credibility determination is supported by substantial evidence. Secondly, the Board correctly held that the petitioner failed to show that he was persecuted on one of the five enumerated grounds. And most importantly, assuming that the petitioner was credible, the government has shown by preponderance of the evidence that the country conditions have changed. Let's take that last point first, if you don't mind. The BIA didn't address the language saying this is sufficiently individualized. But it didn't explain how. Why is that adequate? I'm sorry. Why is that adequate? Our holding is that change country conditions have to be individualized. You have to show that the change can't just rely on generic change country conditions. You have to show that the country conditions have changed as to the petitioner or those similarly situated. Now, the BIA in this case did use the phrase individual or sufficiently individualized, but didn't explain why. Tell me how you think that the record sustains that conclusion of individualized change country conditions. Yes, Judge Thomas. First of all, I would say on the one hand, the petitioner has not shown that he has an individual experience of and I think that's a factor. Secondly, I think the State Department reports are quite specific. They talk about not only about the conditions in India, not only about conditions in the Punjab, not only about conditions with Sikh politically active groups, but it talks about the status of low-level members of the AISSF, such as the petitioner. I think the State Department reports are quite individualized. Do you think that I know your position is that the government's position is that the petitioner is not credible, but let's assume for the moment that the petitioner had been found credible as to his testimony. Do you believe that testimony that the police were continuing to look for the petitioner would overcome the generalized reports of those similarly situated? Your Honor, I find it difficult to address that because there were so many different accounts that were given by the petitioner to that regard. In one instance, this is all at the hearing, he was saying that he had heard reports from his family that police were coming by. And later it was from a friend of his. And then with regard to that friend, his friend either saw people going by the farm or his friend heard people in town say that people had been by his farm. But in any instance, the petitioner never said that he heard any evidence that the police had come to the farm specifically asking for him. But let's assume, as Thomas indicates, that we find him credible on that point and that there was a threat. What particularized evidence exists now that would suggest that that particular threat no longer exists? Your Honor, what I'm suggesting is that even the petitioner's statements, even if found credible, he does not say that the police came and asked for him by name. All he has is statements, various reports that police went by his farm. But there's no question that when they did the arrest earlier, he was the only one arrested and nobody else was taken, correct? That is his testimony. And then the police came back again. Is there any reason why we would assume that they're not looking for anybody but him, if that was true? If it was true that they came to his farm and asked for him or it was clear they were searching for him, that is, you are correct, that is a sort of individualized finding. So what do we have now that suggests that that threat has passed? Yes, Your Honor. What do we have now that suggests that that threat has passed? That the police are not going to come to him again when he goes back to India. Again, I don't believe the record shows that the police did look for him, given his credibility. What do we make of the letter? I'd like to turn it over just for a second. What do we make of this letter from Harmandir Singh Gill, which seems to indicate independently that the police are still looking for him? The letter was directed to the, talking about the All India Sikh Student Federation issue, but in the last paragraph, if I'm reading it correctly, it says, per information, the police is raiding his home to find out him. If apprehended now, if he returns to India, he might be killed by the police. So there is some independent evidence in the record of some individual targeting. Yes, Your Honor. I don't have, I can't call to mind the date of that letter. Right. But I mean, how do you deal with the letter, except for not knowing the date? It looks like it's 2003. It's a 2003 letter, and the hearing was shortly thereafter. So it was relatively contemporaneous. The hearing, you know, the hearing was in August of 2003. The letter, if I'm reading it correctly, was dated March of 2003. That would be then more recent than the State Department reports. Yeah. So how do you deal with that? I would say that I think the State Department reports are quite strong in this case, and the Petitioner's had the opportunity at any point to reopen the record and to show contrary evidence, whether it is news reports or other reports, more recent, that showed that the police still are persecuting Sikhs, whether militant or non-militant, whether members of the ASSF, high-level or low-level members. The Petitioner's had the opportunity to reopen the record and has not done so. But what else could he show, really? I mean, news reports aren't going to be deemed more credible by an IJ than State Department reports. I mean, to me, the letter is stronger evidence of police looking for him than we usually see. Usually it's a hearsay from a relative. He calls back, and they say, you know, police were still coming by and looking for you, and in some cases we have nothing at all. Here, at least you have a letter from some independence force saying that the police were supposedly looking for him. Your Honor, even if that letter is found to be credible, even if the Petitioner's testimony was that the police had been coming to his farm looking for him in particular, the Petitioner still has not addressed the issue of whether he could relocate elsewhere in India. Well, there was no finding on that by the BIA, though. Yes, Your Honor. And so we can't consider that here. Well, I've diverted you from your argument by taking things in reverse order, so please proceed with what else you wanted to talk to us about. That's just fine. With regard to the Petitioner's credibility, as you well know, the standard is quite high. And in this case, there are multiple grounds that the IJ cited. Within his testimony before the immigration judge, also regarding the assessment to FIRST, some substantial inconsistencies, and then also with regard to his demeanor, very specific findings, as Your Honor mentioned earlier. Aside from the demeanor, what do you think is the strongest evidence or strongest issue on the adverse credibility finding that supports the IJ's decision? I think the most substantial with regard to the inconsistencies within the hearing is the issue about whether he returned home after his arrest. He testified that as soon as he was released from the police, as soon as the town elder submitted a bribe, he fled right away. But his testimony elsewhere is that he was either hospitalized or was received in a clinic for five or six weeks. And he was released within six days upon that release. That is a substantial discrepancy. Additionally, I would say another major inconsistency is whether he was threatened by the BTF, whether he assisted this militant group under duress. In his initial application, he made no mention of that. And I believe it was at his first interview he did not mention that. It was only at his second interview and then later at his IJ hearing that he mentioned that this happened under duress. He was given the opportunity at the hearing to amend that declaration, and he was asked whether he needed to amend that in any way. And he said no. And he did at one point earlier, he did, in fact, amend that declaration. And that amendment did not include any mention of whether this was he had assisted the BTF under duress. And I think that's another major inconsistency. Anything else? You just have a couple seconds left, but I want to make sure you have an opportunity to hit the issues you want to discuss. Those are the most important points I want to bring to the Court's attention. Thank you, counsel. Thank you, Your Honor. Well, just very quickly, Your Honor, in terms of whether or not Mr. Singh was threatened, it was not cited by her, and it's not before this Court. The IJ did cite specific examples of significant inconsistencies as she found them. The AISSF letter was one of them. The letter from the doctor saying he was hospitalized was another one. The petitioner says that he was treated and went home every day for six days in a row. The IJ found that him not sleeping at the hospital was a major inconsistency. And another inconsistency that was cited by the IJ was that Mr. Singh found himself to be still a member, believed himself to be still a member, but he couldn't cite a newspaper article that he had read over the past 13 years, and that that was a major inconsistency. The point is that the IJ made a cumulative credibility finding. She specifically stated that all of the factors she cited are not fatal in and of themselves, and the Court must reverse if it finds any part of the IJ's credibility finding to be unsupported by substantial evidence. Thank you, counsel. Thank you, Your Honor. The case is here to be submitted for decision. We'll proceed to the next case on the oral argument calendar. Yeah. Actually, I need to get some materials anyway, so I'll be just one second. Yeah. Sorry for the short delay. Good morning, Your Honor. Could you speak into the microphone?
judges: Thomas, Graber, Larson